**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 10-CV-21506-UNGARO

LUIS ALFONSO VALLINA,

        Plaintiff,

vs.

MANSIANA OCEAN RESIDENCES
LLC, *et al.*,

        Defendants.

_____/

**OMNIBUS ORDER**

THIS CAUSE is before the Court upon Defendant Fidelity National Title Insurance

Company's ("Fidelity") Motion to Dismiss Plaintiff's Second Amended Complaint[1] (D.E. 82)

and Defendants Mansiana Ocean Residences, LLC ("Mansiana"), Forkosh Development Group,

LLC ("Forkosh LLC"), Alexander Forkosh ("Forkosh") and Daniel Tantleff's ("Tantleff")

Motion to Dismiss Plaintiff's Second Amended Complaint.   (D.E. 83.)

THE COURT has considered the Motions and the pertinent portions of the record and is

otherwise fully advised in the premises.

**I. Background**

This case arises from a dispute over preconstruction deposits held in escrow.  On August

16, 2006, Plaintiff Luis Alfonso Vallina, a citizen of Spain, signed a preconstruction agreement

(the "Agreement") with Defendant Mansiana to purchase a condominium unit for $1,161,000

---

[1]     Plaintiff had named Forkosh Development Group as a defendant in the First Amended
Complaint, however, Plaintiff has dropped it from the Second Amended Complaint.  (*See* First
Am. Compl., D.E. 31, ¶ 8.)

within the Solis Resort and Spa Residences in Sunny Isle Beach, Florida ("Solis Project"). (Second Am. Compl., D.E. 74, ¶¶ 4, 33.)  The Agreement specified December 31, 2009 as the date of substantial completion.  ( *Id*. ¶ 31.)

Fidelity served as the escrow agent for the Solis Project and received preconstruction deposits from purchasers on behalf of Mansiana.  (*Id*. ¶ 10.)  Pursuant to the Agreement, Plaintiff made a deposit equal to twenty percent of the purchase price, or $232,200, in two installments to Defendant Fidelity.  (*Id*. ¶ 5.)  On August 30, 2006, Plaintiff tendered the first installment, $116,100, to Fidelity, and on April 2, 2007, Plaintiff tendered the second installment.  (*Id*. ¶¶ 35, 40.)

The Agreement incorporated by reference two escrow agreements executed between Mansiana and Fidelity, one dated April 5, 2000 ("First Escrow Agreement") and the other dated November 30, 2007 ("Second Escrow Agreement").  (*Id*. ¶ 33.) The First Escrow Agreement (DE. 74-2) provides, in pertinent parts:

> 1. From time to time, **Developer will deliver checks payable to Escrow Agent which will represent [purchasers'] deposits on the Contracts**...
>
> 2. **Escrow Agent shall disburse the purchaser's deposit(s), escrowed hereunder**...
>
> (d) To Developer (as to the portion of the deposits equal to no more than 10% of the applicable purchase price) within five (5) days after receipt of the Developer's certification, together with documented evidence, that the Director of the Division of Florida Land Sales, Condominiums and Mobile Homes has accepted "other assurances" in accordance with Section 718.202(1) of the Florida Condominium Act in lieu of requiring that such portion of the deposit be held in escrow pursuant to the [First Escrow] Agreement....
>
> (e) **To Developer (as to the portion of the deposit in excess of 10% of the applicable purchase price) within five (5) days after receipt of the Developer's written certification that construction of the improvements of the Condominium**

**has begun**, that the Developer will use such funds in the actual construction and development of the Condominium Property and that no part of these funds will be used for salaries or commissions, or for expenses of salesmen or for advertising purposes. **Escrow agent shall not, however, be responsible to assure that such funds are so employed and should be entitled to rely solely on such certification**.

First Escrow Agreement (D.E. 74-2) (emphasis added).

The Second Escrow Agreement sets forth the escrow agent's duties with respect to handling assurances that the developer posts to escrow accounts. (DE. 31-2.)[2] It provides, in pertinent parts:

C. ....**Deposits under each Contract up to ten percent (10%) of the sales price...shall be held...in a separate escrow account hereinafter referred to as "Ten Percent Escrow Account" and deposits in excess of ten percent (10%) of the sales price...shall be held...in a separate escrow account hereinafter referred to as the "Special Escrow Account."** ...
...

6. From time to time **Developer may deliver to the Escrow Agent, one or more irrevocable and unconditional letters of credit or a surety bond** in favor of Fidelity National Title Insurance Company and the Director of the Division and/or the Division. A copy of any letter of credit or surety bond shall be delivered to the Division....**Upon issuance of such a letter of credit or surety bond, and upon receipt of a letter from the Division approving the same**, **Escrow Agent shall**, **within three (3) business days thereafter, disburse to Developer deposits held in Ten Percent Escrow Account, or thereafter paid to Escrow Agent for deposit to Ten Percent Escrow Account....subject to terms, conditions and limitations hereinafter provided**:

...

(d) Notwithstanding anything herein contained to the contrary **(i) Developer shall supply the Division a replacement of the assurance which is acceptable to the**

---

[2]      Plaintiff has not attached the Second Escrow Agreement to its Second Amended Complaint, however, Plaintiff had attached it to his First Amended Complaint. The Court will refer to the agreement attached to the First Amended Complaint for the purposes of resolving the instant motions. *Hunnings v. Texaco, Inc*., 29 F.3d 1480, 1484 (11th Cir. 1994) (holding that in ruling on a motion to dismiss courts should construe facts in the complaint in a light most favorable to the plaintiff).

**Division, not less than forty five (45) days prior to the expiration date of the assurance,** and (ii) **if Escrow Agent has not received notification from the Division that Developer has complied with this obligation, then thirty (30) days prior to expiration of the assurance, Escrow Agent shall provide to Division a statement showing the status of the total funds secured by the assurance as of the thirtieth (30th) day prior to the expiration of the assurance based on the monthly report furnished by the Developer. Escrow Agent shall concurrently make demand for replacement of the alternative assurance...,** or payment from the Developer to Escrow Agent of the amount of total funds secured by the assurance**. In the event that such payment is not received by Escrow Agent within five (5) days following the mailing of the demand by Escrow Agent, then Escrow Agent shall make demand upon the assurance** to the extent of the amount of funds **and place such funds with Escrow Agent in Ten Percent Escrow Account**, to be held and maintained by Escrow Agent in accordance with the terms of this [Second Escrow Agreement]. **In the event that the Escrow Agent fails to make the necessary demand on the assurance as set forth above, the Division shall have the right to then make the demand on the assurance pursuant to the terms of this Agreement and such funds shall thereafter be placed in escrow pursuant to the terms of this [Second Escrow Agreement]. It is understood that this procedure shall be similarly followed in the event of a dispute with any purchaser relating to refunds of any funds secured by the assurance** from time to time **that is not resolved within fifteen (15) days from the date the Developer receives notice of the dispute.** Developer shall deposit all funds required to be escrowed at least fifteen (15) days prior to the expiration of alternative assurance.

Second Escrow Agreement (D.E. 31-2) (emphasis added).

Plaintiff alleges that as of November 2009, only nine floors of the Solis Project had been completed. (D.E. 74 ¶ 60.) On December 30, 2009, Plaintiff's attorney demanded that Mansiana return Plaintiff's deposit. (*Id*. ¶ 64.) The attorney also gave notice of the dispute to Fidelity. (*Id*.) On June 26, 2010, Plaintiff told Fidelity to demand the return of the assurances that secured his deposit. (*Id*. ¶ 65.) Plaintiff alleges that Fidelity failed to make the demand. (*Id*.)

Plaintiff brings this action on behalf of himself and others similarly situated. He is suing the escrow agent, Fidelity, and the following defendants: (i) Mansiana, the owner of the Solis Project property (*Id*. ¶ 6); (ii) Forkosh Development Group, LLC, the owner of the Solis Project

4

(*Id*. ¶ 8); (iii) Alexander Forkosh, the owner of Mansiana and Forkosh Development Group, LLC (*Id*. ¶ 6); and, (iv) Daniel Tantleff, a representative of Mansiana and Forkosh Development Group, LLC who signed the Agreement on behalf of Mansiana (collectively "Forkosh Defendants"). (*Id*. ¶ 9.)

Plaintiff has amended his complaint twice. (*See* First Am. Compl., D.E. 31; Second Am. Compl., D.E. 74.) Plaintiff's First Amended Complaint alleged four claims against Fidelity: (a) accounting; (b) breach of statutory fiduciary duty; (c) breach of fiduciary duty under the First and Second Escrow Agreements; and, (d) specific performance[3]. (D.E. 31 ¶¶ 115–139, 146–151.) The First Amended Complaint alleged six claims against Forkosh Defendants: (a) accounting; (b) violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq*., Fla. Stat ("FDUTPA"); (c) three claims brought under the anti-fraud provisions of the Interstate Land Sales Full Disclosures Act ("ILSA"), 15 U.S.C. §1701, *et seq*.; and, (d) conspiracy to commit fraud. (*Id*. ¶¶ 82–122.) The First Amended Complaint also contained a breach of contract claim and voidable contract[4] claim against Mansiana. (*Id*. ¶¶ 73–81, 140–145.) The Court dismissed the breach of statutory fiduciary duty claim with prejudice, the breach of fiduciary duty under the escrow agreements claim as premature, and the specific performance claim without prejudice. (*See* D.E. 59 at 21.) The Court also dismissed all the ILSA fraud claims and the conspiracy claims without prejudice. (*Id*.) The Court granted Plaintiff leave to amend only the specific performance claim, the ILSA claims, and the conspiracy claim. (*Id*.)

---

[3]     Plaintiff dropped the specific performance claim in the Second Amended Complaint.

[4]     Plaintiff dropped the voidable contract claim in the Second Amended Complaint.

5

Plaintiff's Second Amended Complaint includes the following: (a) a breach of contract claim against Mansiana (Count I); (b) three ILSA fraud claims against Forkosh Defendants (Counts II, III and IV); (c) a conspiracy claim against Forkosh Defendants (Count V); (d) a FDUTPA claim against Forkosh Defendant (Count VI); (e) an accounting claim against Fidelity and Forkosh Defendants (Count VII); (f) a new breach of common law fiduciary duty claim against Fidelity (Count VIII); and (g) a breach of fiduciary duty under the second escrow agreement claim against Fidelity (Count IX).  (*See* D.E. 74.)

## II. Fidelity's Motion to Dismiss Second Amended Complaint

Fidelity moves to dismiss Counts VII ("Accounting"), VIII ("Breach of Common Law Fiduciary Duty"), and IX ("Breach of Fiduciary Duty Under the Escrow Agreement") for Plaintiff's failure to seek leave to amend his First Amended Complaint.   Alternatively, Plaintiff moves to dismiss all three counts pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim.

## A.  Legal Standard

In order to state a claim, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, such rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

6

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. (citation omitted). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. (citation omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. (internal quotations and citation omitted). Determining whether a complaint states a plausible claim for relief is a context specific undertaking that requires the court to draw on its judicial experience and common sense. *Id*. (citation omitted).

**B. Count VII - Accounting**

In Count VII, Plaintiff brings a claim for equitable accounting against both Fidelity and Forkosh Defendants.   Plaintiff concedes in his Responses to Fidelity and Forkosh Defendants' Motions to Dismiss that he fails to state a claim for equitable accounting.  Accordingly, the Court will dismiss with prejudice Count VII.

**C. Count VIII - Breach of Common Law Fiduciary Duty**

In Count VIII, Plaintiff brings a claim for breach of common law fiduciary duty.  Fidelity argues that the Court should dismiss this count because Plaintiff did not seek to leave to amend the First Amended Complaint to add this new theory of liability.  The Court agrees with Fidelity. In the order dismissing the First Amended Complaint, the Court gave Plaintiff leave to amend only his claim for specific performance against Fidelity. (*See* D.E. 59 at 21.)   The Court

dismissed with prejudice Plaintiff's claim for breach of statutory fiduciary duty and dismissed as premature Plaintiff's claim for breach of fiduciary duty under the Second Escrow Agreement. (*Id.*)  In the Second Amended Complaint, Plaintiff ignores the Court's order and asserts a brand new claim for breach of common law fiduciary.   The Court is not obliged to consider this new theory of liability because Plaintiff failed to seek leave to add this claim.  Fed. R. Civ. P. 15(a)(2).   "If an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, *it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval.*" 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1484 (3d ed. 2010) (emphasis added)*; see also Italiano v. Jones Chem., Inc.*, 1997 WL 118426, at *3 (M.D. Fla. Feb. 21, 1997) (recognizing that dismissal of a claim with leave to amend does not grant a plaintiff the right to "substantially revise non-related portions" of the original complaint).   Moreover, even if Plaintiff had sought leave to amend his complaint to add the breach of common law fiduciary duty claim, the Court would have denied the amendment because it would not have been based on the discovery of any new facts and would have prejudiced Fidelity by adding a brand new theory of liability.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is justified when amendment would cause "undue delay, bad faith, dilatory motive on the part of the movant, ...undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."); *Hoover v. Blue Cross and Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1998) (holding that the district court acted properly in treating the plaintiff's supplemental pleading as a nullity, particularly since it was inclined to deny any motion for leave to amend that the plaintiff might have filed).

8

Assuming *arguendo* that Plaintiff properly asserted a breach of common law fiduciary duty claim, the Court would still dismiss it for failure to state a claim.  To state a claim for breach of common law fiduciary duty Plaintiff must allege "(1) the existence of a fiduciary duty; (2) its breach; and (3) damages proximately caused by the breach." *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002).  Plaintiff alleges that Fidelity breached its fiduciary duty by failing to disclose that Mansiana was involved in litigation concerning its title to the Solis property and had made  a claim under Fidelity's title policy.  Plaintiff's allegation fails because he cannot establish that Fidelity, in its capacity as escrow agent, had a duty to disclose Mansiana's claim under the title policy or the related lawsuit.   The escrow agent is a special or limited agent with duties primarily established by the escrow agreement.  *SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A.,* 584 So.2d 1051, 1054 (Fla. 2d DCA 1991); *see also Craddock v. Cooper,* 123 So.2d 256, 257 (Fla. 2d DCA 1960).   While an agent has a duty to disclose to a principal all material facts relevant to its agency, Fidelity's litigation with Mansiana is not relevant to the performance of its duties as escrow agent.  *See Sudberry v. Lowke*, 403 So.2d 1117, 1118 (Fla. 5th DCA 1981).  The First and Second Escrow Agreements determine the nature and limits of Fidelity's agency.  *See SMP, Ltd,* 584 So.2s at 1054.  Here, the First Escrow Agreement addresses Fidelity's duties relating to the release of escrowed preconstruction deposits, and the second one addresses Fidelity's handling of assurances that the developer posts to the escrow accounts.  The escrow agreements do not address Fidelity's separate role as Mansiana's title insurer.  Thus, the existence of litigation relating to Fidelity's role as Mansiana's insurer is not a material fact relevant to Fidelity's role as escrow agent for Plaintiff and Mansiana.  Accordingly, Fidelity was under no duty to disclose the alleged litigation to Plaintiff.

Plaintiff also alleges that Fidelity breached its common law fiduciary duty by releasing funds to Mansiana when it "knew or had reason to know" that construction of the condominium had not begun.  This Court already determined that in releasing funds upon certification from Mansiana that construction had begun, Fidelity did not breach its statutory fiduciary duty. (D.E. 59 at 10) ("As per the language of the [First Escrow Agreement], Fidelity did not have a duty to investigate whether construction had actually begun.  Therefore Fidelity could maintain its independence so long as it released funds upon Mansiana's certification that construction had begun.").  Likewise, Fidelity did not breach its common law fiduciary duty by releasing funds upon certification from Mansiana.  As already noted, an escrow agent's duties are determined by the escrow agreement.  *SMP, Ltd*, 584 So.2d at 1054.  The First Escrow Agreement specifically states that Fidelity must release escrowed funds upon certification from Mansiana that construction has begun.  (D.E. 74-2.)  Accordingly, Fidelity did not breach its common law fiduciary duty by releasing the funds after receiving Mansiana's certification.

In sum, the Court will dismiss with prejudice the breach of common law fiduciary duty claim in Count VIII because Plaintiff asserted it without seeking leave from the Court, however, even if Plaintiff had properly asserted the claim, the Court would dismiss it pursuant to Rule 12(b)(6) with prejudice.

**D. Count IX - Breach of Fiduciary Duty Under the Second Escrow Agreement**

In Count IX, Plaintiff reasserts the same claim for breach of fiduciary duty under the second escrow agreement that it asserted in the First Amended Complaint.  The Court dismissed that claim, stating that Plaintiff failed to allege damages proximately caused by Fidelity's failure to demand the return of assurances.  (D.E. 59 at 14) ("Nowhere in the Amended Complaint does

10

Vallina allege damages proximately caused by Fidelity's failure to demand a return of the assurances."). The Court held that Plaintiff's claim was premature, noting that

> If Fidelity had acted pursuant to his duty under [the Second Escrow Agreement], it would have demanded return of the assurances and then placed them back into escrow. Fidelity's actions would not have put Vallina in possession of the assurances, thus Vallina would not have *gained* anything from Fidelity acting pursuant its duty. Accordingly, Vallina did not *lose* anything when Fidelity failed to place the assurances back into escrow.

*Id*. at 14 (emphasis included). In the Second Amended Complaint, Plaintiff alleges that Fidelity breached the Second Escrow Agreement by failing to demand a return of the assurance upon receiving Plaintiff's notification of a dispute between it and Mansiana. Plaintiff, however, once again fails to allege damages proximately caused by Fidelity's failure to demand a return of the assurances. Moreover, Plaintiff fails to demonstrate any underlying injury. As the Court already noted in the previous order of dismissal, Plaintiff did not lose anything when Fidelity failed to place the assurances back into escrow. Accordingly, Count IX is premature and the Court will stay it.

**III. Forkosh Defendants' Motion to Dismiss Second Amended Complaint**

Forkosh Defendants move to dismiss the following: (i) the breach of contract claim (Count I) on the grounds that Plaintiff lacks standing to sue; (ii) the ILSA fraud claims (Counts II, III, and IV) for failure to plead fraud pursuant to Rule 9(b) and for failure to state a claim pursuant to Rule 12(b)(6); (iii) the conspiracy to commit fraud claim (Count V) for failure to state a claim pursuant to Rule 12(b)(6); (iv) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim (Count VI) against Defendants Alexander Forkosh and Daniel Tantleff for failure to state a claim pursuant to Rule 12(b)(6); (v) the accounting claim (Count VII) for failure to state a claim pursuant to Rule 12(b)(6). They also move to strike class allegations that pertain

to Counts II, III, IV, and V and dismiss Plaintiff as a putative class representative for the fraud claims.

**A. Legal Standard[5]**

Ordinarily, a complaint is adequate if it meets Rule 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fraud claims, however, are subject to Rule 9(b)'s heightened pleading requirements.  Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other condition of mind of a person shall be averred generally." Fed. R. Civ. P. 9(b). The Eleventh Circuit has stated that Rule 9(b)'s fraud particularity requirement is met as long as the complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citation omitted).  When, as here, a fraud claim involves multiple defending parties, the claimant must make specific and separate allegations against each defendant.  *Haskins v. R.J. Reynold Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998) (dismissing complaint for failing to satisfy Rule 9(b) when it referred to "defendants" generally and did not differentiate among them).

---

[5]      The Rule 12(b)(6) legal standard that applies to Fidelity's Motion to Dismiss also applies to Forkosh Defendants' Motion to Dismiss.

**B. Count I - Breach of Contract**

Plaintiff brings a breach of contract claim against Forkosh Defendants, alleging that Forkosh Defendants violated the terms of the Agreement.  Forkosh Defendants argue that Plaintiff lacks standing to assert a claim for breach of contract because he is not a party to the contract.  In support of their argument, Forkosh Defendants cite to a portion of the Agreement that indicates that "Solls-3604-706 Corp" is the buyer.  (D.E. 74-1 at 1.)  Plaintiff contends that he is a party to the contract because he signed the Agreement and all the accompanying documents, including the Receipt of the Condominium Documents form (*Id*. at 23) and the Broker Registration and Commission Agreement (*Id*. at 26).  Plaintiff also argues that no entity by the name of Solls-3604-706 Corp exists, thus Solls-3604-706 cannot be a party to the contract.

The issue is whether Plaintiff is a party to the contract.  A person who is not a party to a contract may not sue for breach of that contract when that person receives only an incidental or consequential benefit from the contract.  *Metropolitan Life Ins. Co.v. McCarson*, 467 So.2d 277 (Fla. 1985).  On the first page of the Agreement, there is a provision that states "the term 'Buyer' and/or 'Purchaser' means or refers to the buyer or buyers listed below who have signed this Agreement." (*Id*. at 1.)  Immediately below this provision is a space for the "Buyer" to print his or her name, address, and other biographical information.  (*Id*.)  The name "Solls-3604-706 Corp" appears in typewritten font in the space provided for the "Buyer" to print his or her name. (*Id*.)   The last page of the Agreement is signed by "Luis Alfonso Vallina" in the space provided for the "Buyer['s]" signature.  (*Id*. at 20.)  "Luis Alfonso Vallina['s]" signature also  appears in the space reserved for the "Purchaser['s]" signature on the two documents accompanying the Agreement, the Receipt of the Condominium Documents and the Broker Registration and

Commission Agreement.  (*Id*. at 23, 26.)  On the Broker Registration and Commission

Agreement there is also an area where the "Purchaser" prints his or her name, address, and other

biographical information.  "Luis Alfono Vallina" is printed in the "Purchaser's Name" field and

Vallina's address is listed as being in Spain.  (*Id*. at 26.)  The purchase documents taken together

appear to indicate that Plaintiff is a party to the contract, however, Forkosh Defendants'

allegation that Plaintiff is not a party brings up an issue of fact that is best resolved on summary

judgment or at trial.  Accordingly, the Court will deny Forkosh Defendants' motion to dismiss

Count I.

**C. Counts II, III, and IV - ILSA Violations**

In Counts II, III, and IV, Plaintiff alleges that Forkosh Defendants violated the ILSA's

anti-fraud provisions, 15 U.S.C. §1703(a)(2)(A), (B), and (C), respectively.   Section 1703(a)(2)

provides, in pertinent part:

> (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under
> section 1702(a) of this title [it shall be unlawful]:
>
> (A) to employ any device, scheme, or artifice to defraud;
>
> (B) to obtain money or property by means of any untrue statement of material fact,
> or omission to state a material fact necessary in order to make the statements made
> (in light of the circumstances in which they were made and within the context of the
> overall offer and sale or lease) not misleading, with respect to any information
> pertinent to the lot or subdivision;
>
> (C)to engage in any transactions, practice, or course of business which operates or
> would operate as a fraud or deceit upon a purchaser;

15 U.S.C. §§1703(a)(2)(A) – (C).   Forkosh Defendants move to dismiss the ILSA fraud claims

for failure to plead fraud pursuant to Rule 9(b) and for failure to state a claim pursuant to Rule

12(b)(6).

**1. Rule 9(b)**

Although the Court afforded Plaintiff a chance to re-plead the ILSA fraud allegations in his First Amended Complaint, the allegations in Plaintiff's Second Amended Complaint still fail under Rule 9(b)'s heightened pleading requirement.  In the First Amended Complaint, Plaintiff's most specific ILSA fraud allegations were that Forkosh Defendants did not provide a Property Report to Plaintiff or any member of the Class; that Forkosh Defendants failed to advise Plaintiff about a mortgage lien on and pending litigation against the property; and that Forkosh Defendants continued to market the Solis Project in spite of their inability to obtain construction financing and a building permit.  (*See* D.E. 31.)  The Court dismissed those allegations because, *inter alia*, Plaintiff failed to specify which of the five Forkosh Defendants was responsible for each fraudulent misrepresentation or omission and how each misrepresentation or omission misled him.  (D.E. 59 at 19.)

In the Second Amended Complaint, Plaintiff once again alleges that "Forkosh Defendants" committed fraud under ILSA by failing to advise him about a mortgage lien on and pending litigation against the Solis Project property and by continuing to market the Solis Project in spite of an inability to obtain construction financing and a building permit.  Plaintiff's new theory of ILSA fraud liability is that Forkosh Defendants failed to disclose a Beach Access Easement that burdens the property in the Prospectus for the Project.  (*See* "Prospectus," D.E. 83-1.)[6]  Specifically, Plaintiff alleges that "Forkosh Defendants" failed to disclose "that there will

---

[6]      Plaintiff failed to attach the Prospectus to its Second Amended Complaint.  Forkosh Defendants attach it to their Motion to Dismiss.  Although "[i]n deciding a motion to dismiss, the Court's analysis is limited to the four corners of the plaintiff's complaint and the attached exhibits" *Serrano v. U.S.*, 2008 WL 343490, at *1 (S.D. Fla. Feb. 5, 2008), the undersigned will review the Prospectus, because Plaintiff refers to the document in his complaint and the document is central to one of his claims.  *See Fin. Sec. Assurance, Inc.v. Stephens, Inc.*, 500 F.3d

be a 10,000 square foot 'Oceanfront Park' available to the public 24 hours a day including lighting, benches, showers, foot washes, and landscaping approved by City" and that "this requirement runs with the land and someday would be the obligation of the condominium association." (D.E. 74 ¶ 25.) All of Plaintiff's ILSA fraud allegations against all the defendants fail under Rule 9(b)'s heightened pleading requirement, because Plaintiff fails to separately aver each defendant's level and manner of participation in each alleged fraud and how each alleged fraud deceived him. *See Haskins,* 995 F. Supp. at 1440.

**2. Rule 12(b)(6)**

Plaintiff's ILSA fraud allegations against Defendant Forkosh Development Group, LLC fail under Rule 12(b)(6). To state a claim under ILSA's anti-fraud provisions, a party must allege that "a developer or agent" engaged in the prohibited activity. 15 U.S.C. § 1703(a). Here, Plaintiff alleges that Forkosh Development Group, LLC is the developer (D.E. 74 ¶ 8), but the Agreement, the Broker Registration and Commission Agreement, the Prospectus, and both escrow agreements define Mansiana as the developer.[7] Thus, Plaintiff cannot allege that Forkosh Development Group, LLC is the developer. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (holding that a court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint or matters properly subject to

---

1276, 1284 (11th Cir. 2007).

[7]    Although Plaintiff does not specifically state in the Second Amended Complaint that Mansiana is the "developer", the Agreement and accompanying documents define Mansiana as the "developer." Accordingly, the Court reads the complaint in a light most favorable to Plaintiff and concludes that Plaintiff adequately alleges that Mansiana is the developer under ILSA. *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (holding that district courts must read the facts in the complaint in a light most favorable to the plaintiff).

judicial notice).  Moreover, Plaintiff fails to allege anywhere in the Second Amended Complaint that Forkosh Development Group, LLC was the developer's agent or that Forkosh Development Group, LLC acted as the developer's agent through Alexander Forkosh in promoting, marketing or advertising the sale of the unit to Plaintiff.   And, while Alexander Forkosh may have signed the documents on behalf of Mansiana, and Tantleff may have been "involved" in the marketing of the Solis project, the Second Amended Complaint lacks any allegations that they participated in any way in the alleged wrongful conduct.  *See Parra v. Minto Town Park, LLC*, 2008 WL 4773272, at * 2 (S.D. Fla. Oct. 30, 2008) (dismissing ILSA claims against individual defendants where plaintiff failed to sufficiently set forth allegations of personal involvement); *Santridian v. Landmark Custom Ranches, Inc.*, 2008 WL 4571820, at * 3 (S.D. Fla. Oct. 14, 2008) (dismissing individual selling entity and noting that simply signing the sales agreement and being the owner of the selling entity is insufficient for individual ILSA liability).  Thus, Plaintiff fails to state a plausible claim against any of the defendants other than Mansiana under ILSA's anti-fraud provisions.  *See Feeley v. Total Realty Management*, 660 F.Supp. 2d 700, 710–11 (E.D. Va. 2009) (dismissing ILSA claims against mortgage lenders for the plaintiff's failure to allege facts sufficient to state that lenders were "developers" or "agents").

Several of Plaintiff's individual ILSA fraud allegations also fail under Rule 12(b)(6).  To state a claim under ILSA's anti-fraud provisions, Plaintiff must allege that he reasonably relied on the misrepresentation or omission.  *See Garcia*, 528 F.Supp. 2d at 1294–95 (dismissing ILSA fraud claim when the plaintiff failed to plead sufficient facts to support reasonable reliance on alleged misrepresentations).  Plaintiff alleges that Forkosh Defendants misrepresented and omitted details about the Solis Project both before and after he tendered his second deposit.  All

the allegations of fraud occurring *after* Plaintiff tendered his second deposit fail as a matter of law, because Plaintiff has not and cannot allege that he reasonably and detrimentally relied on the misrepresentations.   (*See* D.E. 74 ¶¶ 59–62.)

Likewise, Plaintiff's allegations that he was mislead by the Prospectus also fail as a matter of law for Plaintiff's failure to demonstrate reliance.  As Forkosh Defendants correctly point out, the Prospectus discloses the easement.   The Prospectus provides that

> [t]he Condominium Property is burdened by the Beach Access Easement, in a form to be established by Developer and the City.  The Beach Access Easement is intended to provide, among other things, (i) the establishment and maintenance of a beach access easement, and (ii) construction and maintenance on the Condominium Property of public amenities and public facilities and may include public restroom facilities.

(D.E. 83-1 at 13.)   The Prospectus thus also indicates that the beach easement includes the construction of public amenities and facilities.  In his response, Plaintiff first argues that the Prospectus was not sufficient to put him on notice of the oceanfront park.  The Court disagrees. The Prospectus clearly states that the easement may include the construction and maintenance of "public amenities" or "public facilities."   (*See Id*.)  It may not use the term "oceanfront park," but an oceanfront park that is open to the public is a "public amenity."  *See Bazemore v. Friday*, 478 U.S. 385, 418 (1986) (recognizing parks and recreational facilities as "public amenities"). Plaintiff next argues that he could and did rely on a sales brochure that states that buyers would enjoy "over 150 feet of spectacular private ocean front property."  This argument is also unavailing.  First, Plaintiff does not allege in his Second Amended Complaint that he relied on this brochure.  Second, as Defendant correctly points out, Article 36 of the Agreement explicitly states that the buyer cannot rely on promotional materials or other representations not expressly contained in the Agreement.  (*See* D.E. 74-1 at 18.)  Accordingly, Plaintiff's allegations that he

18

was misled by the Prospectus fail as a matter of law because the allegations contradict the

Agreement and the accompanying Prospectus.  *See Garcia v. Santa Maria Resort, Inc.,* 528

F.Supp. 2d 1283, 1295 (S.D. Fla. 2007) (holding that "reliance on fraudulent misrepresentation is

unreasonable as a matter of law where the alleged misrepresentation is contradicted by express

terms of the written agreement").[8]

In sum, Plaintiff's ILSA fraud allegations fail under both Rule 9(b) and Rule 12(b)(6).

Plaintiff has had two opportunities to re-plead his ILSA fraud claims, yet he apparently cannot

allege fraud with particularity, nor can he allege facts sufficient to state a claim for ILSA fraud.

Accordingly, the Court will dismiss Counts II, III, and IV with prejudice.  *See Bryant v. Dupree*,

252 F.3d 1161, 1163 (11th Cir. 2001)(noting that a district court may dismiss a claim with

prejudice if the court has given the plaintiff at least one chance to amend the complaint and the

plaintiff has failed to cure the deficiencies of the old complaint). [9]

---

[8]     Plaintiff use of  *Merritt v. Lyons Heritage Pasco LLC*, 2010 WL 3666763 (M.D. Fla.,
Sept. 15, 2010) and *Gentry v. Harborage Cottages-Stuart-LLL*, 602 F.Supp. 2d 1239 (S.D. Fla.
2009) to argue that Forkosh Defendants engaged in material misrepresentation is misplaced.  In
*Merritt*, the seller represented to the buyer that his home would be located in a gated community
with a private golf course within the community, however, the court found that the seller lacked
any intention of constructing such a community and intended that the golf course be open to the
public.  *Merritt,* 2010 WL 3666763 at 5.  In *Gentry,* the seller failed to disclose to the buyer that
there would be a large steel building and an industrial manufacturing business located right next
door to his property.  *Gentry*, 602 F.Supp. at 1255.  The court found that the existence of such
structures, when the buyer's expectation was that the lot next door would be vacant, was
material.  *Id*.  Unlike the defendant in *Merrit*, Forkosh Defendants *disclosed* at the outset that
part of the land may include public amenities.   And, unlike in *Gentry*, where the existence of a
corrugated steel high-rise was material, any alleged difference between Forkosh Defendants'
easement disclosure in the Prospectus and the terms of the Beach Access Easement is immaterial
in light of the fact that Plaintiff had notice of an easement.
[9]     Plaintiff brings this action on behalf of himself and a Class of ninety-one members.
Plaintiff alleges that there are "numerous questions of law and fact" common to him and each
member of the Class. (D.E 74 ¶¶ 70–78.)  Forkosh Defendants move to strike the ILSA-based
class allegations in the Second Amended Complaint.  It is well-settled that when a claim fails, the

**D. Count V- Conspiracy**

In Count V, Plaintiff alleges that Forkosh Defendants conspired to commit fraud by failing to "disclose critical, necessary information" and by "misrepresentations and the omission of material information that was required to be disclosed by ILSA." (D.E. 74 ¶110.)  Forkosh Defendants argue that Plaintiff fails to state a claim for conspiracy.

To state claim for civil conspiracy, a plaintiff must allege the following elements: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy." *Principal Life Ins. Co. v. Mosberg*, 2010 WL 473042, at *5 (S.D. Fla., Feb. 5, 2010).  Moreover, the parties must also maintain a claim for the underlying civil wrong committed through the conspiracy.  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (dismissing a civil conspiracy claim where the underlying statutory claim failed).

As the Court has already noted, Plaintiff fails to allege facts sufficient to sustain the underlying fraud claims that serve as the basis of the conspiracy claim.  Thus, the Court will dismiss with prejudice Count V for failure to state a claim for conspiracy to commit fraud.

**E. Count VI - FDUTPA Violations**

In Count VI, Plaintiff alleges that Forkosh Defendants violated the FDUTPA, § 501.201 *et seq*., Fla. Stat., by failing to disclose information to Plaintiff that was "material to a decision in purchasing a residential unit in the Solis Project."  (D.E. 74 ¶ 119.)   Defendant argues that the

---

class, as it relates to the claim, also fails.  *See Friedlander v. Nims,* 755 F.2d 810 (11th Cir. 1985) (dismissing class action when the complaint failed to state a claim for fraud). Accordingly, the Court strikes the ILSA-based class allegations from the Second Amended Complaint because they relate to the failed ILSA fraud claims alleged in Counts II, III, and IV.

Court should dismiss the FDUTPA claims against individual defendants Alexander Forkosh and Daniel Tantleff for failure to state a claim pursuant to Rule 12(b)(6).

The FDUTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1). In order to proceed against an individual for a violation of the FDUTPA, the plaintiff must allege that the individual was a "direct participant" in the dealings. *Aboujaoude v. Poinciana Dev. Co II*, 509 F.Supp. 2d 1266, 1277 (S.D. Fla. 2007). When the plaintiff makes general allegations against an individual but fails to specify his actions or how the actions violated the FDUTPA, the plaintiff fails to state a FDUTPA claim against the individual. *Id*. Here, Plaintiff generally avers that "Forkosh Defendants" violated the FDUTPA, however, Plaintiff fails to state how Alexander Forkosh and Daniel Tantleff directly participated in the unlawful practices. (*See* D.E. 74 ¶¶ 119–122.) Accordingly, the Court will dismiss Count VI against Alexander Forkosh and Daniel Tantleff.

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Fidelity's Motion to Dismiss is GRANTED IN PART. Counts VII and VIII are DISMISSED WITH PREJUDICE. Count IX is STAYED. It is further

ORDERED AND ADJUDGED that Forkosh Defendants' Motion to Dismiss is GRANTED as to Counts II, III, IV, V, VI, and VII. Alexander Forkosh and Daniel Tantleff are DISMISSED WITH PREJUDICE from this action. The only active claims remaining are the breach of contract claim against Mansiana in Count I and the FDUPTA claim against Mansiana and Forkosh Development Group, LLC in Count VI.

DONE AND ORDERED in Miami, Florida this _16th__ day of June, 2011.

21

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE